| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| ZIEVE, BRODNAX & STEELE, LLP<br>LESLIE M. KLOTT, ESQ. #279622<br>ERIN M. MCCARTNEY, ESQ. #308803<br>30 Corporate Park, Suite 450<br>Irvine, CA 92606<br>Phone: (714) 848-7920<br>Facsimile: (714) 908-7807<br>Email: bankruptcy@zbslaw.com<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

| In re:<br><br>Daniel Fumbarg | CASE NO.: 1:16-bk-12368-MT<br><br>CHAPTER: 13 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C.  362 (with supporting declarations) (REAL PROPERTY)** |
| | DATE: November 2, 2016<br><br>TIME: 11:00 am<br><br>COURTROOM: 302 |

**Movant:** The Bank Of New York Mellon Fka The Bank Of New York, As Trustee For The Benefit Of The Certificateholders Of The CWABS Inc., Asset-Backed Certificates, Series 2006-BC2

1. **Hearing Location:**

☐ 255 East Temple Street, Los Angeles, CA 90012        ☐ 411 West Fourth Street, Santa Ana, CA 92701

☒ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101

☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (if any)(Responding Parties), their attorneys (if any), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                     Page 1                          **F 4001-1.RFS.RP.MOTION**

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____ ; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 09/28/206

Zieve, Brodnax & Steele, LLP
_____
Printed name of law firm (if applicable)

Erin M. McCartney
_____
Printed name of individual Movant or attorney for Movant

/s/ Erin M. McCartney
_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 2                    **F 4001-1.RFS.RP.MOTION**

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

## 1. **Movant is the:**

☐ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

☒ Other (*specify*):  Movant is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan.  Movant, directly or through an agent, has possession of the promissory note and the promissory note is either made payable to Movant or has been duly endorsed in blank.

## 2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 48-371 CAMINO REAL
   *Unit/suite number*:
   *City, State, zip code*: COACHELLA, CA 92236

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __2__ ):

## 3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary bankruptcy petition under chapter ☐ 7 ☐ 11 ☐ 12 ☒ 13
      was filed on (*date*) __08/15/2016__ .

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13 was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

## 4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:
      (1) ☒ Movant's interest in the Property is not adequately protected.
         (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.
         (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.
         (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.
      (2) ☒ The bankruptcy case was filed in bad faith.
         (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.
         (B) ☒ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.
         (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.
         (D) ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.
         (E) ☒ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.
         (F) ☒ Other (*see attached continuation page*).

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                      Page 3                                      **F 4001-1.RFS.RP.MOTION**

(3) ☒  (*Chapter 12 or 13 cases only*)

    (A) ☐  All payments on account of the Property are being made through the plan.

        ☐  Preconfirmation ☐  Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☒  Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐  The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐  The Movant regained possession of the Property on (*date*) _____.

    which is ☐  prepetition ☐  postpetition.

(6) ☒  For other cause for relief from stay, see attached continuation page.

b. ☐  Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐  Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☒  Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☒  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☒  Multiple bankruptcy cases affecting the Property.

5. **Grounds for Annulment of the Stay.**  Movant took postpetition actions against the Property or the Debtor.

    a. ☐  These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

    b. ☐  Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

    c. ☐  Other (*specify*):

6. **Evidence in Support of Motion: (*Declaration(s) MUST be signed under penalty of perjury and attached to this motion*)**

    a. The REAL PROPERTY DECLARATION on page 6 of this motion.

    b. ☐  Supplemental declaration(s).

    c. ☐  The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

    d. ☐  Other:

7. ☐  **An optional Memorandum of Points and Authorities is attached to this motion.**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*
Page 4
**F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. §362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement. Any such agreement shall be nonrecourse unless stated in a reaffirmation agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:

   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☒ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:

   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:

   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☒ See attached continuation page for other relief requested.

Date: 09/28/2016

Zieve, Brodnax & Steele, LLP
Printed name of law firm (if applicable)
Erin M. McCartney
Printed name of individual Movant or attorney for Movant

/s/ Erin M. McCartney
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                           Page 5                                     F 4001-1.RFS.RP.MOTION

## REAL PROPERTY DECLARATION

I, (print name of Declarant) _____Katherine Montes_____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (specify):

   a. ☐ I am the Movant

   b. ☐ I am employed by Movant as (state title and capacity):

   c. ☒ Other (specify): I am a *Sr Bankruptcy Case Manager* for Shellpoint Mortgage Servicing, servicer for The Bank Of New York Mellon Fka The Bank Of New York, As Trustee For The Benefit Of The Certificateholders Of The CWABS Inc., Asset-Backed Certificates, Series 2006-BC2, Movant.

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (see attached):

3. The Movant is:

   a. ☐ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _____.

   b. ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit _____.

   c. ☐ Servicing agent authorized to act on behalf of the:

      ☐ Holder.

      ☐ Beneficiary.

   d. ☒ Other (specify): Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this motion for The Bank Of New York Mellon Fka The Bank Of New York, As Trustee For The Benefit Of The Certificateholders Of The CWABS Inc., Asset-Backed Certificates, Series 2006-BC2. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgage Property, the foreclosure will be conducted in the name of The Bank Of New York Mellon Fka The Bank Of New York, As Trustee For The Benefit Of The Certificateholders Of The CWABS Inc., Asset-Backed Certificates, Series 2006-BC2, Movant. Movant directly or through an agent has possession of the Note. The Note is either made payable to Movant or has been duly endorsed. Movant is the original mortgagee or beneficiary or the assignee of the Mortgage.

4. a. The address of the Property is:

      Street address: 48-371 CAMINO REAL
      Unit/suite number:
      City, State, zip code: COACHELLA, CA 92236

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

      See Exhibit 2

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 6                                    F 4001-1.RFS.RP.MOTION

5.  Type of property (*check all applicable boxes*):

a. ☐  Debtor's principal residence          b. ☒  Other residence
c. ☐  Multi-unit residential                d. ☐  Commercial
e. ☐  Industrial                            f. ☐  Vacant land
g. ☐  Other (*specify*):

6.  Nature of the Debtor's interest in the Property:

a. ☐  Sole owner
b. ☐  Co-owner(s) (*specify*):
c. ☐  Lienholder (*specify*):
d. ☒  Other (specify): Grantee under unauthorized Grant Deed
e. ☒  The Debtor  ☐ did  ☒ did not list the Property in the Debtor's schedules. * Debtor has not filed Schedules
f. ☒  The Debtor acquired the interest in the Property by  ☒ grant deed  ☐ quitclaim deed  ☐ trust deed.

The deed was recorded on (*date*)  08/22/2016  .

7.  Movant holds a  ☒ deed of trust  ☐ judgment lien  ☐ other (specify) _____

a. ☒  A true and correct copy of the document as recorded is attached as Exhibit   2   .
b. ☒  A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit   1   .
c. ☒  A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit   3   .

8.  Amount of Movant's claim with respect to the Property:

|     |     | PREPETITION | POSTPETITION | TOTAL |
|-----|-----|-------------|--------------|-------|
| a. | Principal: [Plus Deferred Balance, if any] | $ | $ | $ 247,900.00 |
| b. | Accrued interest: | $ | $ | $ 188,294.89 |
| c. | Late charges | $ | $ | $ 0.00 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 9,590.35 |
| e. | Advances (property taxes, insurance): | $ | $ | $ 52,804.44 |
| f. | Less suspense account or partial balance paid: | $[           ] | $[           ] | $[ 166.78          ] |
| g. | TOTAL CLAIM as of (*date*): 10/10/2016 | $ | $ | $ 498,422.90 |
| h. | ☐ Loan is all due and payable because it matured on (date) |  |  |  |

9.  Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):
a. Notice of default recorded on (*date*)  05/15/2015  or ☐ none recorded.
b. Notice of sale recorded on (*date*)  06/30/2016  or ☐ none recorded.
c. Foreclosure sale originally scheduled for (*date*)  07/22/2016  or ☐ none scheduled.
d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.
e. Foreclosure sale already held on (*date*) _____ or ☒ none held.
f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                              Page 7                          **F 4001-1.RFS.RP.MOTION**

*N/A Bad Faith

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:

   a. Amount of current monthly payment as of the date of this declaration: $ _____ for the month of _____ 20 _____ .

   b. Number of payments that have come due and were not made: _____ . Total amount: $ _____

   c. Future payments due by time of anticipated hearing date (*if applicable*):
An additional payment of $ _____ will come due on (*date*) _____ , and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $ _____ will be charged to the loan.

   d. The fair market value of the Property is $ _____ established by:
     (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____
     (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____
     (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____
     (4) ☐ Other (*specify*):

   **e. Calculation of equity/equity cushion in Property:**

   Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (if any) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Movant | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT:** | | | $ |

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:
     (1) ☐ Preliminary title report.
     (2) ☐ Relevant portions of the Debtor's schedules.
     (3) ☐ Other (*specify*):

   g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ _____ and is _____ % of the fair market value of the Property.

   h. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ _____ .

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

i. ☐ Estimated costs of sale: $ _____ (estimate based upon _____ % of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☒ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: 10/19/2016 .
A plan confirmation hearing currently scheduled for (*or concluded on*) the following date: 11/15/2016 .
A plan was confirmed on the following date (*if applicable*): _____ .

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| N/A Bad Faith | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____ .)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| N/A | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                    $
(*For details of type and amount, see Exhibit _____ *)

e. Attorneys' fees and costs:                                              $
(*For details of type and amount, see Exhibit _____ *)

f. Less suspense account or partial paid balance:                    $[              ]
                    TOTAL POSTPETITION DELINQUENCY:          $ N/A Bad Faith

g. Future payments due by time of anticipated hearing date (if applicable): N/A Bad Faith .
An additional payment of $ _____ will come due on _____, and on
the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late
charge of $ _____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how
applied (if applicable):
$ N/A _____ received on (*date*) _____
$ _____ received on (*date*) _____
$ _____ received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____ . See attached declaration(s) of chapter 12 trustee or
13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 9                              F 4001-1.RFS.RP.MOTION

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____ which is ☐ prepetition ☐ postpetition

17. ☒ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☒ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☒ Other (*specify*): See attached continuation page

18. ☒ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:
   a. ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.
   b. ☒ Multiple bankruptcy cases affecting the Property include:

     1. Case name:  Maria T Neill (**See Exhibit 5,** Docket)
       Chapter:  13          Case number:  6:11-bk-42249-MJ
       Date filed:  10/17/2011    Date discharged: _____    Date dismissed:  11/04/2011
       Relief from stay regarding the Property ☐ was ☒ was not granted

     2. Case name:  Maria T Neill (**See Exhibit 6,** Docket)
       Chapter:  7          Case number:  6:15-bk-21125-MJ
       Date filed:  11/16/2015    Date discharged: _____    Date dismissed:  12/04/2015
       Relief from stay regarding the Property ☐ was ☒ was not granted

     3. Case name:  Daniel Fumbarg-***Instant Case*** (**See Exhibit 7,** Docket)
       Chapter:  13          Case number:  1:16-bk-12368-MT
       Date filed:  08/15/2016    Date discharged: _____    Date dismissed:  09/28/2016
       Relief from stay regarding the Property ☐ was ☒ was not granted

☒ See attached continuation page for information about other bankruptcy cases affecting the Property.
☒ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                     Page 10                                     **F 4001-1.RFS.RP.MOTION**

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

9/28/16 _____    Katherine Montes _____    _____
Date                        Printed Name                          Signature

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                               Page 11                          F 4001-1.RFS.RP.MOTION

| | |
|---|---|
| In re<br><br>Daniel Fumbarg<br><br>(SHORT TITLE)<br>Debtor. | CHAPTER: 13<br><br><br>CASE NO.: 1:16-bk-12368-MT |

## CONTINUATION PAGE ATTACHMENT

### (MOVANT: The Bank Of New York Mellon Fka The Bank Of New York, As Trustee For The Benefit Of The Certificateholders Of The CWABS Inc., Asset-Backed Certificates, Series 2006-BC2)

### ATTACHMENT 4.a(2)(f) & 17.d.

☒  On or about August 22, 2016, a Grant Deed was executed by Maria Neill, the original borrower, and recorded at the Riverside County Recorder's office without the approval of Movant and/or this Court. The Grant Deed conveys an interest in the Real Property in favor of Daniel Fumbarg.   A true and correct copy of the Grant Deed is attached hereto as **Exhibit "4"** and incorporated herein by reference.

There are three bankruptcy cases that affect the property.

On October 17, 2011, the **first** bankruptcy case was filed by Maria T. Neill under a Chapter 13 Bankruptcy case number 6:11-bk-42249-MJ. The case was dismissed November 4, 2011 for failure to file Schedules, Statements, and/or Plan.  A true and correct copy of the Docket is attached hereto as **Exhibit "5"** and incorporated herein by reference.

On November 16, 2015, the **second** bankruptcy case was filed by Maria T. Neill under a Chapter 7 Bankruptcy case number 6:15-bk-21125-MJ. The case was dismissed December 4, 2015 for failure to file Schedules, Statements, and/or Plan.  A true and correct copy of the Docket is attached hereto as **Exhibit "6"** and incorporated herein by reference.

On August 15, 2016, the **third** and instant bankruptcy case was filed by Daniel Fumbarg under a Chapter 13 Bankruptcy case number 1:16-bk-12368-MT. Debtor did not file Schedules, Statements, and/or Plan in this case. A true and correct copy of the Docket is attached hereto as **Exhibit "7"** and incorporated herein by reference. The case was dismissed September 28, 2016 with 180-day bar to re-filing. A true and correct copy of the Dismissal is attached hereto as **"Exhibit "8"** and incorporated herein by reference.

Movant requests relief under 11 U.S.C. Section 362(d)(4) in all pending and future bankruptcy cases affecting the subject property so that Movant may pursue its state law remedies against the Real Property.

### ATTACHMENT 14.

Other relief requested:

☒  Although the case is dismissed, Movant requests that the Court set aside the dismissal for purposes of hearing the motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4).

# ADJUSTABLE RATE NOTE

## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST
RATE AND MY MONTHLY PAYMENT.  THIS NOTE LIMITS THE AMOUNT MY
INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I
MUST PAY.

OCTOBER 24, 2005                     IRVINE           CALIFORNIA
[Date]                               [City]           [State]

        48-371 CAMINO REAL, COACHELLA, CALIFORNIA 92236
                          [Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 247,900.00          (this amount is
called "Principal"), plus interest, to the order of Lender.  Lender is OWNIT MORTGAGE SOLUTIONS,
INC., A CALIFORNIA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest
at a yearly rate of    7.750  %.  The interest rate I will pay may change in accordance with Section 4 of this
Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after
any default described in Section 7(B) of this Note.

## 3.   PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the    1st   day of each month beginning on  DECEMBER 1    ,
2005  . I will make these payments every month until I have paid all of the principal and interest and any other
charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled
due date and will be applied to interest before Principal. If, on  NOVEMBER 1, 2035   , I still owe
amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 4387, HOUSTON, TEXAS
77210-4387
                              or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,775.99          . This
amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate
that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly
payment in accordance with Section 4 of this Note.

*[stamp:]* ...that this
...is a true and...
the original hereof

By *Sarah Post*

Fidelity National
Title - Escrow

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT          Page 1 of 5

Form 3520 1/01
*DocMagic* *eFarms* 800-649-1362
*www.docmagic.com*

Us3520.not.1.tem

Exhibit 1

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the 1st day of NOVEMBER, 2007          , and on that day every  6th  month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 750/1000            percentage points (    6.750   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than    10.750 % or less than     7.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000            percentage point(s) (    1.000   %) from the rate of interest I have been paying for the preceding  6     months. My interest rate will never be greater than     13.750 %. My interest rate will never be less than       7.750      %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

This is to certify that this is a true and correct copy of the original hereof.

By Sarah Fox

Fidelity National

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 2 of 5

Form 3520 1/01

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3520.not.2.tem

Exhibit 1

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be   5.000  % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

This is to certify that this is a true and correct copy of the original hereof

By _____

Fidelity National

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                Page 3 of 5

Form 3520 1/01

DocMagic *€Farmm* 800-649-1362
www.docmagic.com

Exhibit 1

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT Page 4 of 5

Form 3520 1/01
DocMagic *CForms* 800-649-1362
www.docmagic.com

Us3520.not.4.tem

This is to certify that this is a true and correct copy of the original hereof

By _Sarah Post_
    ry National

Exhibit 1

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MARIA T. NEILL          -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

*[Sign Original Only]*

This is to certify that this
is a true and correct copy of
the original hereof

By _____
Fidelity National
Title Escrow

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT          Page 5 of 5

DocMagic *eForms* 800-649-1362
www.docmagic.com

Form 3520 1/01

Us3520.not.5.tem

Exhibit 1

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS, INC

WITHOUT RECOURSE
OWNIT MORTGAGE SOLUTIONS, INC.
A CALIFORNIA CORPORATION

BY: _____

MARIA ARTAVIA, FUNDER


PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC

BY: _____

MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

Exhibit 1

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE PROMISSORY NOTE

Loan Number:

Property Address: 48-371 CAMINO REAL, COACHELLA, CALIFORNIA 92236

THIS ADDENDUM is made this 24th day of OCTOBER  2005                , and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to OWNIT MORTGAGE SOLUTIONS, INC., A CALIFORNIA CORPORATION                                      (the Lender).

THIS ADDENDUM supersedes Sections 3(A), 3(B), 4(C), 7(A) and 11 of the Note. None of the other provisions of the Note are changed by this Addendum.

## 3.  PAYMENTS
(A) Time and Place of Payments
I will pay interest by making payments every month for the first  60   payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues. I will pay principal and interest by making payments every month thereafter for the next  300   payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

I will make my monthly payments on the first day of each month beginning on DECEMBER 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on NOVEMBER 1, 2035         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at P.O. BOX 4387, HOUSTON, TEXAS 77210-4387

                                            , or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 1,601.02              . This payment amount is based on the original principal balance of the Note. This payment amount may change.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 750/1000                   percentage point(s) (  6.750   %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

is a true and correct copy of
the original hereof

_Sarah Post_
Fidelity National
Title - Escrow

Exhibit 1

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE PROMISSORY NOTE

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be  5.000  % of my overdue payment of interest during the Interest-Only Period,   5.000  % of my overdue payment of principal and interest thereafter.  I will pay this late charge promptly but only once on each late payment.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including , but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower MARIA T. NEILL            Date          Borrower                            Date

Borrower                            Date          Borrower                            Date

Borrower                            Date          Borrower                            Date

This is to certify that this is a true and correct copy of the original hereof

By _____ Sarah Post

Fidelity National

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE PROMISSORY NOTE
07/15/03                           Page 2 of 2    Title - ESCROW          DocMagic *eForms* 800-649-1362
                                                                          www.docmagic.com

Ioaarpn.om2.2.tem

Exhibit 1

# PREPAYMENT ADDENDUM TO NOTE

Loan Number:

Date: OCTOBER 24, 2005

Borrower(s): MARIA T. NEILL

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this    24th    day of
OCTOBER,    2005        , and is incorporated into and shall be deemed to amend and supplement
that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of OWNIT
MORTGAGE SOLUTIONS, INC., A CALIFORNIA CORPORATION

("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date
as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the
Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower
and Lender further covenant and agree as follows:

Section    5  of the Note is amended to read in its entirety as follows:

5    . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due. A payment
of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note
Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not
made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that I owe
under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid
interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount
of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my
monthly payment unless the Note Holder agrees in writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment may
reduce the amount of my monthly payments after the first Change Date following my partial
Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest
rate increase.
If within TWENTY-FOUR ( 24    ) months from the date the Security Instrument is
executed I make a full Prepayment or one or more partial Prepayments, and the total of all such
Prepayments in any 12-month period exceeds TWENTY                          percent
(    20.000  %) of the original principal amount of the loan, I will pay a Prepayment charge
in an amount equal to SIX        ( 6    ) months' advance interest on the amount by
which the total of my Prepayments within any 12-month period exceeds TWENTY
percent ( 20.000    %) of the original principal amount of the loan.

CALIFORNIA PREPAYMENT ADDENDUM TO NOTE
(CIVIL CODE PROVISION)
6/03                                         Page 1 of 2

This is to certify that this
is a true and correct copy of
the original hereof

DocMagic *eForms* 800-649-1362
www.docmagic.com
By Sarah
Fidelity National
Title - Escrow

Capatn.ppf.1.tem

Exhibit 1

If the Note contains provisions for a variable interest rate, and the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

_Maria T. Neill_    10/24/05
Borrower  MARIA T. NEILL          Date          Borrower                    Date


Borrower                          Date          Borrower                    Date


Borrower                          Date          Borrower                    Date


CALIFORNIA PREPAYMENT ADDENDUM TO NOTE
(CIVIL CODE PROVISION)
6/03

Page 2 of 2

DocMagic *eForms* 800-649-1362
www.docmagic.com

·Capato.ppf.2.tcm

This is to certify that this
is a true and correct copy of
the original hereof
By _Sarah Post_
Fidelity National
Title - Escrow

Exhibit 1

FIDELITY NATIONAL TITLE COMPANY
SUBDIVISION DEPARTMENT

DOC # 2005-0901030
10/31/2005 08:00A Fee:66.00
Page 1 of 20
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

OWNIT MORTGAGE SOLUTIONS, INC.
27349 AGOURA ROAD, SUITE 100
AGOURA HILLS, CALIFORNIA 91301

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|----|------|-------|-----|-------|
|   |   |   | 20   |      |    |      |       |     |       |
| A | R | L |      |      |    | COPY | LONG | REFUND | NCHG | EXAM |

[Space Above This

# DEED OF TRUST

T
LW

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated  OCTOBER 24, 2005          , together with all Riders to this document.
(B)  "Borrower" is MARIA T. NEILL, A SINGLE WOMAN


Borrower is the trustor under this Security Instrument.
(C)  "Lender" is OWNIT MORTGAGE SOLUTIONS, INC.

Lender is a CALIFORNIA CORPORATION                                                    organized
and existing under the laws of  CALIFORNIA
Lender's address is 27349 AGOURA ROAD, SUITE 100, AGOURA HILLS,
CALIFORNIA 91301

(D)  "Trustee" is FISDELITY NATIONAL TITLE
1300 DOVE STREET, SUITE # 310, NEWPORT BEACH, CALIFORNIA 92660

(E)  "MERS" is  Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)  "Note" means the promissory note signed by Borrower and dated  OCTOBER 24, 2005          .
The Note states that Borrower owes Lender TWO HUNDRED FORTY-SEVEN THOUSAND NINE HUNDRED AND 00/100                    Dollars (U.S. $ 247,900.00         ) plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic eFormas 800-649-1362
Form 3005 01/01                                 Page 1 of 14                                www.docmagic.com

Ca3005.mzd.1.tem

Exhibit 2

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
NOVEMBER 1, 2035                      .

(G)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.

(I)    "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are
to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | ADDENDUM TO ADJUSTABLE RIDER |

(J)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.

(K)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.

(L)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.

(M)   "Escrow Items" means those items that are described in Section 3.

(N)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender: (i) the repayment of
the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the
                         COUNTY    of              RIVERSIDE                      :
        [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

---

Ca3005.mzd.2.tem

Exhibit 2

LOT 37 OF TRACT NO. 30684-1, IN THE CITY OF COACHELLA, COUNTY OF
RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK
360, PAGES 88 TO 100, INCLUSIVE, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.
A.P.N. #: 612-220-004-7

SEE EXHIBIT "ONE" ATTACHED
HERETO AND MADE A PART HEREOF

which currently has the address of  48-371 CAMINO REAL
                                                      [Street]

COACHELLA                                    , California  92236        ("Property Address"):
[City]                                                     [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security
Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose
and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling
this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall
pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late
charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due
under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other
instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,
Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in
one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,
treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured
by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other
location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return
any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender
may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights
hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          *DocMagic eForms* 800-649-1362
Form 3005 01/01                              Page 3 of 14                              *www.docmagic.com*

Ca3005.mzd.3.tem

Exhibit 2

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

---

Exhibit 2

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Ca3005.mzd.5.tem

Exhibit 2

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                              Page 6 of 14                        DocMagic *eForms* 800-649-1362
                                                                                                www.docmagic.com

Ca3005.mzd.6.tem

Exhibit 2

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

Ca3005.mzd.7.tem

Exhibit 2

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 8 of 14                    DocMagic *eForms* 800-649-1362
                                                                                   www.docmagic.com

Ca3005.mzd.8.tem

Exhibit 2

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

Ca3005.mzd.9.tem

Exhibit 2

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

Exhibit 2

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The

Cs3005.mzd.11.tem

Exhibit 2

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Exhibit 2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Maria T. Neill_ _____ (Seal)
MARIA T. NEILL                    -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

Witness:                          Witness:

_____  _____

Ca3005.mzd.13.tem

Exhibit 2

State of California )
) ss.
County of RIVERSIDE )

On *OCTOBER 24, 2005* before me, *DAVE DOWNIE NOTARY PUBLIC*

personally appeared  MARIA T. NEILL

~~personally known to~~ me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

DAVE DOWNIE
COMM. # 1399407
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. FEB. 9, 2007

_____
NOTARY SIGNATURE

*DAVE DOWNIE*
_____
(Typed Name of Notary)

NOTARY SEAL

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        *DocMagic eForms* 800-649-1362
Form 3005 01/01                         Page 14 of 14                                www.docmagic.com

Ca3005.mzd.14.tem

Exhibit 2

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE RIDER

Loan Number:

Property Address: 48-371 CAMINO REAL, COACHELLA, CALIFORNIA 92236

THIS ADDENDUM is made this 24th day of OCTOBER 2005 , and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to OWNIT MORTGAGE SOLUTIONS, INC., A CALIFORNIA CORPORATION

(the Lender).

THIS ADDENDUM amends and supersedes Section 4(C) and B of the Rider. None of the other provisions of the Note are changed by this Addendum.

4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
    (C) Calculation of Changes
    Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 750/1000 percentage point(s) ( 6.750 %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.
    During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
    Uniform Covenant 18 of the Security Instrument is amended to read as follows:

    Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed,

---

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
07/15/03                                            Page 1 of 2

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

Exhibit 2

# INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

_Maria T. Neill_ (Seal)
MARIA T. NEILL          -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ioxarr.om2.2.tem

Exhibit 2

# ADJUSTABLE RATE RIDER

## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 24th day of OCTOBER, 2005 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to OWNIT MORTGAGE SOLUTIONS, INC.,
A CALIFORNIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

48-371 CAMINO REAL, COACHELLA, CALIFORNIA 92236

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND
THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of      7.750 %. The Note provides for changes
in the interest rate and the monthly payments, as follows:

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)    Change Dates
The interest rate I will pay may change on the 1st  day of NOVEMBER, 2007 ,
and on that day every 6th  month thereafter. Each date on which my interest rate could change is called
a "Change Date."
(B)    The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                              Page 1 of 3

*DocMagic* 800-649-1362
www.docmagic.com

Exhibit 2

(C)    Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 750/1000                percentage points (     6.750   %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

(D)    Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.750   % or less than     7.750   %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000                 percentage points (     1.000   %) from the rate of interest I have been paying for the preceding     6     months.  My interest rate will never be greater than 13.750   %.   My interest rate will never be less than     7.750   %.

(E)    Effective Date of Changes

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)    Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX                     *DocMagic* eFerrns  800-649-1362
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)                                              *www.docmagic.com*
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                        Page 2 of 3

Us3138.rid.2.tem

Exhibit 2

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Maria T. Neill_ _____ (Seal)                    _____ (Seal)
MARIA T. NEILL          -Borrower                                                 -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                                 -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                                 -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                          Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Exhibit 2

# EXHIBIT "ONE"

LOT 37 OF TRACT NO. 30684-1, IN THE CITY OF COACHELLA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 360, PAGES 88 TO 100, INCLUSIVE, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

TOGETHER WITH ANY AND ALL EASEMENTS, RIGHTS, BENEFITS AND INTERESTS APPURTENANT TO SAID LOT AS CREATED AND/OR ESTABLISHED IN THE DECLARATION RECORDED DECEMBER 3, 2004 AS INSTRUMENT NO. 2004-0965687, AND ANY AMENDMENTS THERETO, IN THE OFFICIAL RECORDS OF RIVERSIDE COUNTY.

EXCEPTING THEREFROM AND RESERVING TO GRANTOR ALL OIL, GAS, MINERALS, AND OTHER HYDROCARBONS SUBSTANCES LYING BELOW A DEPTH OF 500 FEET BUT WITHOUT THE RIGHT OF SURFACE ENTRY.

Exhibit 2

(Rev. 11/17/04)

**LANDSAFE TITLE**

RECORDING REQUESTED BY:
RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT**
**AND TAX STATEMENTS TO:**

RECONTRUST COMPANY
1757 TAPO CANYON ROAD, SVW-88
SIMI VALLEY, CA 93063



DOC # 2009-0453092
08/31/2009 08:00A Fee:27.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | | T: | | CTY | UNI |

T
061

## SUBSTITUTION OF TRUSTEE AND ASSIGNMENT OF DEED OF TRUST

The undersigned MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (hereinafter referred to as Beneficiary) is the Beneficiary of that certain Deed of Trust dated 10/24/2005, executed by MARIA T. NEILL, A SINGLE WOMAN, Trustor, to FIDELITY NATIONAL TITLE, as Trustee, and recorded as Instrument No. 2005-0901030 on 10/31/2005, of Official Records in the County Recorder's Office of RIVERSIDE County, California. NOW THEREFORE, Beneficiary hereby substitutes RECONTRUST COMPANY, N.A., successor in interest by merger to RECONTRUST COMPANY, A NEVADA CORPORATION, WHOSE ADDRESS IS:1757 TAPO CANYON ROAD, SVW-88, SIMI VALLEY, CA 93063 , as Trustee under said Deed of Trust herein referred to, in the place and stead of and with all rights, title, powers, and interest of the former trustee described above.

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, conveys and transfers to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006- BC2 all beneficial interest under that certain Deed of Trust described above. Said described land: "As more fully described in the above referenced Deed of Trust." Together with the note or notes therein described or referred to, the money due and to become due thereon with the interest, and all rights accrued or to accrue under said Deed of Trust.

DATED: August 26, 2009

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

State of: _____**California**_____ )BY: _____

County of: _____**Ventura**_____ )    Barbara DiPrimo , Assistant Secretary

On **AUG 2 6 2009** before me, _____Angeles Medina_____ , notary public, personally appeared _____Barbara DiPrimo_____ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Notary Public's Signature        Angeles Medina

ANGELES MEDINA
Commission # 1786299
Notary Public - California
Ventura County
My Comm. Expires Dec 23, 2011

*Form subasgnmnt (01/09)*

Exhibit 3

# CERTIFICATION

Under the provision of Government Code 27361.7 I certify under the penalty that the following is a true copy of illegible wording found in the attached document.

### (Print or Type the page number(s) and Wording below):

2009
Barbara DiPrimo
(S) whose

DATE:_____8___/___31___/___09_____

SIGNATURE:_____



Exhibit 3

**LANDSAFETITLE**

RECORDING REQUESTED BY:

RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT**
**AND TAX STATEMENTS TO:**

RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

DOC # 2014-0016347
01/15/2014 08:00 AM Fees: $25.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: CTOLOSSA

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### CORPORATION ASSIGNMENT OF DEED OF TRUST/~~MORTGAGE~~

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFERS TO:

**THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE
BENEFIT OF THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED
CERTIFICATES, SERIES 2006-BC2**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 10/24/2005, EXECUTED
BY MARIA T. NEILL, A SINGLE WOMAN, TRUSTOR(S), TO FIDELITY NATIONAL TITLE, AS TRUSTEE
AND RECORDED AS INSTRUMENT NO. 2005-0901030 ON 10/31/2005, OF OFFICIAL RECORDS IN THE
COUNTY RECORDER'S OFFICE OF RIVERSIDE COUNTY, IN THE STATE OF CALIFORNIA.

DESCRIBING THE LAND THEREIN: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE
AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE
UNDER SAID DEED OF TRUST/MORTGAGE.

DATED: JANUARY 3, 2014
                    THE BANK OF NEW YORK MELLON FKA THE BANK
                    OF NEW YORK, AS TRUSTEE FOR THE
                    CERTIFICATEHOLDERS CWABS INC., ASSET-BACKED
                    CERTIFICATES, SERIES 2006-BC2
                    BANK OF AMERICA, N.A., ATTORNEY IN FACT

                    BY: STEPHEN ALLEN JOHNSON
                    TITLE: ASSISTANT VICE PRESIDENT

State of: TEXAS          )

County of: DALLAS        )

On JANUARY 3, 2014 before me, Dylan Harvill, notary public, personally appeared
STEPHEN ALLEN JOHNSON, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___TEXAS___ that the foregoing
paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

DYLAN HARVILL
Notary Public, State of Texas
My Commission Expires
May 04, 2016

*Page 1 of 1*                    *CAASGNMNT_2013.12.EP_12/2013*

Exhibit 3

To: Bankruptcy Dept.    Page 3 of 4       2016-08-24 11:56:05 (GMT)       18184751803 From: Saving Houses

Case 1:16-bk-12368-MT    Doc 15   Filed 09/29/16   Entered 09/29/16 10:59:16   Desc
Main Document     Page 46 of 62

**RECORDING REQUESTED BY:**

MARIA NEILL

**WHEN RECORDED MAIL TO AND MAIL TAX
STATEMENTS TO:**

Name: MARIA NEILL

Address: 48371 Camino Real

City: Coachella

State, Zip: CA 92236

## 2016-0299212

08/22/2016 12:01 PM

***Customer Copy Label***

The paper to which this label is affixed
has not been compared with the
filed/recorded document

Peter Aldana
County Of Riverside
Assessor-County Clerk-Recorder

---

# GRANT DEED

---

Title Order No. _____ Escrow No. _____ APN No. 612-243-001
THE UNDERSIGNED GRANTOR(s) DECLARE(s)

DOCUMENTARY TRANSFER TAX is $ 0.00 _____ CITY TAX $ 0.00

- ☑ Computed on full value of property conveyed, or
- ☐ Computed on full value less value of liens or encumbrances remaining at time of sale,
- ☐ Unincorporated area     ☑ City of Coachella _____, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

MARIA NEILL

Hereby GRANT(s) to
DANIEL FUMBARG, a single man, and MARIA NEILL, a single woman, as JOINT TENANTS

The following described real property in the County of: Riverside _____, State of California:

Legal Description attached hereto and identified as Exhibit "A"
Property is commonly known as 48371 CAMINO REAL, COACHELLA, CALIFORNIA 92236

8-22-2016
Date

MARIA NEILL
Signature

Signature

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not to the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
County of _Los Angeles_ } ss

On _Aug 22, 2016_ before me, _Choon Kon Kim_
Date                            Name and Title of officer

personally appeared _Maria Neill_ _____ who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

_____
Notary Signature

CHOON KON KIM
COMM. # 2138167
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Jan. 20, 2020

GD (03/13/2015)             MAIL TAX STATEMENTS TO ADDRESS AS SHOWN ABOVE

Exhibit 4

**PlnDue, Incomplete, PRVDISM, DISMISSED, CLOSED**

# U.S. Bankruptcy Court
## Central District of California (Riverside)
### Bankruptcy Petition #: 6:11-bk-42249-MJ

|  |  |
|---|---|
| *Assigned to:* Meredith A. Jury | *Date filed:* 10/17/2011 |
| Chapter 13 | *Date terminated:* 12/14/2011 |
| Voluntary | *Debtor dismissed:* 11/04/2011 |
| Asset | *341 meeting:* 11/28/2011 |

*Debtor disposition:* Dismissed for Failure to File
Information

| | |
|---|---|
| ***Debtor*** | represented by **Maria T Neill** |
| **Maria T Neill** | PRO SE |
| 48371 Camino Real | |
| Coachella, CA 92236 | |
| RIVERSIDE-CA | |
| SSN / ITIN: xxx-xx-2145 | |

***Trustee***
**Rod (MJ) Danielson (TR)**
3787 University Avenue
Riverside, CA 92501
(951) 826-8000

***U.S. Trustee***
**United States Trustee (RS)**
3801 University Avenue, Suite 720
Riverside, CA 92501-3200
(951) 276-6990

| Filing Date | # | Docket Text |
|---|---|---|
|  | **1**<br>(6 pgs; 3 docs) | Chapter 13 Voluntary Petition . Fee Amount $274 Filed by Maria T Neill Schedule A due 10/31/2011. Schedule B due 10/31/2011. Schedule C due 10/31/2011. Schedule D due 10/31/2011. Schedule E due 10/31/2011. Schedule F due 10/31/2011. Schedule G due 10/31/2011. Schedule H due 10/31/2011. Schedule I due 10/31/2011. Schedule J due 10/31/2011. Statement of Financial Affairs due 10/31/2011. Chapter 13 Plan due by 10/31/2011. |

Exhibit 5

| | | |
|---|---|---|
| 10/17/2011 | | Statement - Form 22C Due: 10/31/2011.Statement of Related Case due 10/31/2011. Notice of available chapters due 10/31/2011. Statement of assistance of non-attorney due 10/31/2011. Verification of creditor matrix due 10/31/2011. Summary of schedules due 10/31/2011. Declaration concerning debtors schedules due 10/31/2011. Cert. of Credit Counseling due by 10/31/2011. Statistical Summary due 10/31/2011. Exhibit D due 10/31/2011. Debtor Certification of Employment Income due by 10/31/2011. Incomplete Filings due by 10/31/2011. (Gascon, Jenny) (Entered: 10/17/2011) |
| 10/17/2011 | 2 (3 pgs) | Meeting of Creditors with 341(a) meeting to be held on 11/28/2011 at 08:00 AM at RM 200A, 3685 Main Street, 2nd Floor, Riverside. CA 92501. Confirmation hearing to be held on 11/28/2011 at 01:30 PM at Crtrm 301, 3420 Twelfth St., Riverside, CA 92501. Proof of Claim due by 02/27/2012. (Gascon, Jenny) (Entered: 10/17/2011) |
| 10/17/2011 | 3 | Statement of Social Security Number(s) Form B21 Filed by Debtor Maria T Neill . (Gascon, Jenny) (Entered: 10/17/2011) |
| 10/17/2011 | | Receipt of Chapter 13 Filing Fee - $274.00 by 01. Receipt Number 60087444. (admin) (Entered: 10/18/2011) |
| 10/19/2011 | 4 (5 pgs) | BNC Certificate of Notice (RE: related document(s) 2 Meeting (AutoAssign Chapter 13)) No. of Notices: 4. Notice Date 10/19/2011. (Admin.) (Entered: 10/19/2011) |
| 10/19/2011 | 5 (3 pgs) | BNC Certificate of Notice (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Maria T Neill) No. of Notices: 1. Notice Date 10/19/2011. (Admin.) (Entered: 10/19/2011) |
| 10/19/2011 | 6 (3 pgs) | BNC Certificate of Notice (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Maria T Neill) No. of Notices: 1. Notice Date 10/19/2011. (Admin.) (Entered: 10/19/2011) |
| | 7 (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Deborah Conley on behalf of |

Exhibit 5

| | | |
|---|---|---|
| 10/24/2011 | | Courtesy NEF. (Conley, Deborah) (Entered: 10/24/2011) |
| 10/26/2011 | 8 (2 pgs) | Statement Filed by Trustee Rod (MJ) Danielson (TR). (Danielson (TR), Rod (MJ)) (Entered: 10/26/2011) |
| 11/04/2011 | 9 (1 pg) | ORDER and notice of dismissal for failure to file schedules, statements, and/or plan - **Debtor** Dismissed. (BNC) Signed on 11/4/2011. (Isas, Leticia) (Entered: 11/04/2011) |
| 11/06/2011 | 10 (3 pgs) | BNC Certificate of Notice (RE: related document(s) 9 ORDER and notice of dismissal for failure to file schedules, statements, and/or plan (Option A or Option B) (BNC) No. of Notices: 3. Notice Date 11/06/2011. (Admin.) (Entered: 11/06/2011) |
| 11/07/2011 | 11 (3 pgs) | Notice of Intent to File Trustees Final Report and Account - Chapter 13 Dismissed/Converted . (Danielson (TR), Rod (MJ)) (Entered: 11/07/2011) |
| 11/28/2011 | 12 (1 pg) | Hearing Held re chapter 13 confirmation hearing. Auto dismissal: 11-4-11 (Moser, Renee) (Entered: 11/29/2011) |
| 12/12/2011 | 13 (1 pg) | Declaration re: non-receipt of obj to trustee's final report (Dismissed/Converted Chapter 13 Cases) Filed by Trustee Rod (MJ) Danielson (TR). (Danielson (TR), Rod (MJ)) (Entered: 12/12/2011) |
| 12/12/2011 | 14 (3 pgs) | Chapter 13 Trustee's Final Report and Account Filed by Trustee Rod (MJ) Danielson (TR). (Danielson (TR), Rod (MJ)) (Entered: 12/12/2011) |
| 12/12/2011 | 15 (1 pg) | Proof of service Filed by Trustee Rod (MJ) Danielson (TR). (Danielson (TR), Rod (MJ)) (Entered: 12/12/2011) |
| 12/13/2011 | 16 (1 pg) | ORDER discharging chapter 13 panel trustee and exonerate bond liability Signed on 12/13/2011. (Isas, Leticia) (Entered: 12/14/2011) |
| 12/14/2011 | 17 (1 pg) | Bankruptcy Case Closed - DISMISSED (Firman, Karen) (Entered: 12/14/2011) |

Exhibit 5

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 09/27/2016 11:27:18 | | | |
| PACER Login: | lzieve01:4709007:0 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 6:11-bk-42249-MJ Fil or Ent: filed From: 6/29/2010 To: 9/27/2016 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| Billable Pages: | 2 | Cost: | 0.20 |

Exhibit 5

**Repeat-cacb, Incomplete, RepeatPACER, DISMISSED, CLOSED**

# U.S. Bankruptcy Court
## Central District of California (Riverside)
## Bankruptcy Petition #: 6:15-bk-21125-MJ

|  |  |
|---|---|
| *Date filed:* | 11/16/2015 |
| *Date terminated:* | 12/23/2015 |
| *Debtor dismissed:* | 12/04/2015 |
| *341 meeting:* | 12/21/2015 |
| *Deadline for objecting to discharge:* | 02/19/2016 |
| *Deadline for financial mgmt. course:* | 02/19/2016 |

*Assigned to:* Meredith A. Jury
Chapter 7
Voluntary
No asset

*Debtor disposition:* Dismissed for Failure to File Information

| **Debtor** | represented by **Maria T Neill** |
|---|---|
| **Maria T Neill** | PRO SE |
| 48-371 Camino Real | |
| Coachella, CA 92236 | |
| RIVERSIDE-CA | |
| SSN / ITIN: xxx-xx-2145 | |

*Trustee*
**Charles W Daff (TR)**
18881 Von Karman Avenue
Suite 1500
Irvine, CA 92612
949-748-3770

*U.S. Trustee*
**United States Trustee (RS)**
3801 University Avenue, Suite 720
Riverside, CA 92501-3200
(951) 276-6990

| Filing Date | # | Docket Text |
|---|---|---|
|  | [1](#)<br>(6 pgs; 3 docs) | Chapter 7 Voluntary Petition . Fee Amount $335 Filed by Maria T Neill Statement of Intent (Form B8) due 12/16/2015. Summary of Schedules (Form B6 Pg 1) due 11/30/2015. Schedule A (Form B6A) due 11/30/2015. Schedule B (Form B6B) due 11/30/2015. Schedule C (Form B6C) due 11/30/2015. Schedule D (Form B6D) due 11/30/2015. Schedule E (Form B6E) due 11/30/2015. Schedule F (Form B6F) due |

Exhibit 6

| | | |
|---|---|---|
| 11/16/2015 | | 11/30/2015. Schedule G (Form B6G) due 11/30/2015. Schedule H (Form B6H) due 11/30/2015. Schedule I (Form B6I) due 11/30/2015. Schedule J (Form B6J) due 11/30/2015. Declaration Concerning Debtors Schedules (Form B6) due 11/30/2015. Statement of Financial Affairs (Form B7) due 11/30/2015. Chapter 7 Statement of Your Current Monthly Income (Form B22A-1) Due: 11/30/2015. Statement of Exemption from Presumption of Abuse (Form B22A-1Supp) Due: 11/30/2015. Chapter 7 Means Test Calculation (Form B22A-2) Due: 11/30/2015. Exhibit D (Form B1D) due 11/30/2015. Cert. of Credit Counseling due by 11/30/2015.Statement of Related Cases due 11/30/2015. Notice of Available Chapters (Form B201) due 11/30/2015. Statistical Summary (Form B6 Pg 2) due 11/30/2015. Debtor Certification of Employment Income due by 11/30/2015. Verification of Master Mailing List of Creditors (LBR 1007-1(d)-Local Form) due 11/30/2015. Incomplete Filings due by 11/30/2015. (Tapia, Eileen) (Entered: 11/16/2015) |
| 11/16/2015 | | Judge Meredith A. Jury added to case due to prior related case 6:11-bk-42249-MJ (Tapia, Eileen) (Entered: 11/16/2015) |
| 11/16/2015 | 2 (2 pgs) | Meeting of Creditors 341(a) meeting to be held on 12/21/2015 at 08:00 AM at RM 101, 3801 University Ave., Riverside, CA 92501. Cert. of Financial Management due by 2/19/2016. Last day to oppose discharge or dischargeability is 2/19/2016. (Tapia, Eileen) (Entered: 11/16/2015) |
| 11/16/2015 | 3 | Statement of Social Security Number(s) (Official Form B21) Filed by Debtor Maria T Neill . (Tapia, Eileen) (Entered: 11/16/2015) |
| 11/16/2015 | | Receipt of Chapter 7 Filing Fee - $335.00 by 30. Receipt Number 60128528. (admin) (Entered: 11/17/2015) |
| | | Notice of Debtor's Prior Filings for debtor Maria T Neill Case Number 09-27931, Chapter 13 filed in California Central Bankruptcy on 07/13/2009 , Dismissed for Failure to File Information on 09/09/2009; Case Number 11-42249, Chapter 13 filed in California Central Bankruptcy on 10/17/2011 , Dismissed for Failure to File Information on |

Exhibit 6

| | | |
|---|---|---|
| 11/17/2015 | | 11/04/2011.(Admin) (Entered: 11/17/2015) |
| 11/18/2015 | 4<br>(3 pgs) | BNC Certificate of Notice (RE: related document(s)2 Meeting of Creditors Chapter 7 No Asset) No. of Notices: 2. Notice Date 11/18/2015. (Admin.) (Entered: 11/18/2015) |
| 11/18/2015 | 5<br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 7) filed by Debtor Maria T Neill) No. of Notices: 1. Notice Date 11/18/2015. (Admin.) (Entered: 11/18/2015) |
| 11/18/2015 | 6<br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 7) filed by Debtor Maria T Neill) No. of Notices: 1. Notice Date 11/18/2015. (Admin.) (Entered: 11/18/2015) |
| 12/04/2015 | 7<br>(1 pg) | ORDER and notice of dismissal for failure to file schedules, statements, and/or plan - **Debtor** Dismissed. (BNC) Signed on 12/4/2015 (RE: related document(s)1 Voluntary Petition (Chapter 7) filed by Debtor Maria T Neill, 2 Meeting of Creditors Chapter 7 No Asset). (Mohammad, Sandy) (Entered: 12/04/2015) |
| 12/06/2015 | 8<br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)7 ORDER and notice of dismissal for failure to file schedules, statements, and/or plan (Option A or Option B) (BNC)) No. of Notices: 2. Notice Date 12/06/2015. (Admin.) (Entered: 12/06/2015) |
| | 9 | Chapter 7 Trustee's Report of No Distribution: I, Charles W Daff (TR), having been appointed trustee of the estate of the above-named debtor(s), report that this case was dismissed or converted. I have neither received any property nor paid any monies on account of this estate. I hereby certify that the chapter 7 estate of the above-named debtor(s) has been fully administered through the date of conversion or dismissal. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 1 months. Assets Abandoned (without deducting any secured claims): Not Applicable, Assets Exempt: Not Applicable, Claims Scheduled: Not Applicable, Claims Asserted: Not Applicable, |

Exhibit 6

| | | |
|---|---|---|
| 12/22/2015 | | Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): Not Applicable. Debtor appeared.. (Daff (TR), Charles) (Entered: 12/22/2015) |
| 12/23/2015 | 10 | Bankruptcy Case Closed - DISMISSED. An Order dismissing this case was entered and notice was provided to parties in interest. Since it appears that no further matters are required and that this case remain open, or that the jurisdiction of this Court continue, it is ordered that the Trustee is discharged, bond is exonerated, and the case is closed. (Mohammad, Sandy) (Entered: 12/23/2015) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/27/2016 11:28:12 | | |
| **PACER Login:** | lzieve01:4709007:0 | **Client Code:** |
| **Description:** | Docket Report | **Search Criteria:** 6:15-bk-21125-MJ Fil or Ent: filed From: 6/29/2011 To: 9/27/2016 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 2 | **Cost:** 0.20 |

Exhibit 6

**Repeat-cacb, PlnDue, Incomplete, RepeatPACER, BARDEBTOR, RestrictedDISMISSED**

# U.S. Bankruptcy Court
## Central District of California (San Fernando Valley)
## Bankruptcy Petition #: 1:16-bk-12368-MT

|  |  |
|---|---|
| *Assigned to:* Maureen Tighe | *Date filed:* 08/15/2016 |
| Chapter 13 | *Debtor dismissed:* 09/28/2016 |
| Voluntary | *341 meeting:* 10/19/2016 |
| Asset |  |

*Debtor disposition:* Dismissed for Other Reason

*Debtor*                                                    represented by **Daniel Fumbarg**
**Daniel Fumbarg**                                                PRO SE
6642 Woodlake Ave
West Hills, CA 91307
LOS ANGELES-CA
818-751-4636
SSN / ITIN: xxx-xx-8263

*Trustee*
**Elizabeth (SV) F Rojas (TR)**
Valley Executive Center
15260 Ventura Blvd., Suite 710
Sherman Oaks, CA 91403
818-933-5700

*U.S. Trustee*
**United States Trustee (SV)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 91007
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
|  | [1](#)<br>(20 pgs; 4 docs) | Chapter 13 Voluntary Petition Individual . Fee Amount $310 Filed by Daniel Fumbarg Summary of Assets and Liabilities (Form 106Sum or 206Sum ) due 8/29/2016. Schedule A/B: Property (Form 106A/B or 206A/B) due 8/29/2016. Schedule C: The Property You Claim as Exempt (Form 106C) due 8/29/2016. Schedule D: Creditors Who Have Claims Secured by Property (Form 106D or 206D) due |

Exhibit 7

| | | | |
|---|---|---|---|
| 08/15/2016 | | | 8/29/2016. Schedule E/F: Creditors Who Have Unsecured Claims (Form 106E/F or 206E/F) due 8/29/2016. Schedule G: Executory Contracts and Unexpired Leases (Form 106G or 206G) due 8/29/2016. Schedule H: Your Codebtors (Form 106H or 206H) due 8/29/2016. Schedule I: Your Income (Form 106I) due 8/29/2016. Schedule J: Your Expenses (Form 106J) due 8/29/2016. Declaration About an Individual Debtors Schedules (Form 106Dec) due 8/29/2016. Statement of Financial Affairs (Form 107 or 207) due 8/29/2016. Chapter 13 Plan (LBR F3015-1) due by 8/29/2016. Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (Form 122C-1) Due: 8/29/2016. Chapter 13 Calculation of Your Disposable Income (Form 122C-2) Due: 8/29/2016. Cert. of Credit Counseling due by 8/29/2016. Declaration by Debtors as to Whether Income was Received from an Employer within 60-Days of the Petition Date (LBR Form F1002-1) due by 8/29/2016. Incomplete Filings due by 8/29/2016. (Gasparian, Ana) Additional attachment(s) added on 8/15/2016 (Gasparian, Ana). (Entered: 08/15/2016) |
| 08/15/2016 | 2 (3 pgs) | | Meeting of Creditors with 341(a) meeting to be held on 10/19/2016 at 09:00 AM at RM 100, 21041 Burbank Blvd., Woodland Hills, CA 91367-6003. Confirmation hearing to be held on 11/15/2016 at 09:30 AM at Crtrm 302, 21041 Burbank Blvd, Woodland Hills, CA 91367. Proof of Claim due by 01/17/2017. (Gasparian, Ana) (Entered: 08/15/2016) |
| 08/15/2016 | 3 (1 pg) | | Statement About Your Social Security Number (Official Form 121) Filed by Debtor Daniel Fumbarg . (Gasparian, Ana) Additional attachment (s) added on 8/16/2016 (Gasparian, Ana). (Entered: 08/15/2016) |
| 08/15/2016 | | | Receipt of Chapter 13 Filing Fee - $310.00 by 01. Receipt Number 10068277. (admin) (Entered: 08/16/2016) |
| | | | Notice of Debtor's Prior Filings for debtor Daniel Fumbarg Case Number 11-22666, Chapter 7 filed in California Central Bankruptcy on 10/31/2011 , Dismissed for Other Reason on 01/09/2012; Case |

| | | |
|---|---|---|
| 08/16/2016 | | Number 10-22151, Chapter 7 filed in California Central Bankruptcy on 09/27/2010 , Dismissed for Other Reason on 01/05/2011.(Admin) (Entered: 08/16/2016) |
| 08/17/2016 | 4 (4 pgs) | BNC Certificate of Notice (RE: related document(s) 2 Meeting (AutoAssign Chapter 13)) No. of Notices: 6. Notice Date 08/17/2016. (Admin.) (Entered: 08/17/2016) |
| 08/17/2016 | 5 (2 pgs) | BNC Certificate of Notice (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Daniel Fumbarg) No. of Notices: 1. Notice Date 08/17/2016. (Admin.) (Entered: 08/17/2016) |
| 08/17/2016 | 6 (2 pgs) | BNC Certificate of Notice (RE: related document(s) 1 Voluntary Petition (Chapter 13) filed by Debtor Daniel Fumbarg) No. of Notices: 1. Notice Date 08/17/2016. (Admin.) (Entered: 08/17/2016) |
| 08/25/2016 | 7 (3 pgs) | Order Order 1- Setting Status Conference: 2- Directing Compliance with Applicable Law; and 3- Requiring Debtor(s) to explain why this case should not be converted or dismissed with 180-day bar to refiling (BNC-PDF) (Related Doc # 1 ) Signed on 8/25/2016 (Fisher, Liliana) (Entered: 08/25/2016) |
| 08/25/2016 | 8 | Hearing Set (Re: #7) Hearing to be held on 9/8/2016 at 09:00 AM at Crtrm 302, 21041 Burbank Blvd, Woodland Hills, CA 91367. The case judge is Maureen Tighe (Fisher, Liliana) (Entered: 08/25/2016) |
| 08/27/2016 | 9 (4 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)7 Order (Generic) (BNC-PDF)) No. of Notices: 1. Notice Date 08/27/2016. (Admin.) (Entered: 08/27/2016) |
| 08/31/2016 | 10 (2 pgs) | Motion to Extend Deadline to File Schedules or Provide Required Information Filed by Debtor Daniel Fumbarg (Cetulio, Julie) (Entered: 09/01/2016) |
| | 11 (1 pg) | Order Denying Motion To Extend Deadline to File Schedules or Provide Required Information (BNC-PDF) (Related Doc # 10) Signed on 9/9/2016. |

Exhibit 7

| 09/09/2016 | | (Cetulio, Julie) (Entered: 09/09/2016) |
|---|---|---|
| 09/11/2016 | 12 (2 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)11 Order on Motion to Extend Deadline to File Schedules (BNC-PDF)) No. of Notices: 1. Notice Date 09/11/2016. (Admin.) (Entered: 09/11/2016) |
| 09/28/2016 | 13 (2 pgs) | ORDER of dismissal with special restriction-period against re-filing a new bankruptcy case - **Debtor** Dismissed for 180 days. (BNC-PDF)Barred Debtor Fumbarg, Daniel starting 9/28/2016 to 3/27/2017 Signed on 9/28/2016 (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Daniel Fumbarg, 2 Meeting (AutoAssign Chapter 13), 7 Order (Generic) (BNC-PDF), 8 Hearing (Bk Other) Set). (Cetulio, Julie) (Entered: 09/28/2016) |
| 09/28/2016 | 14 (1 pg) | Notice of dismissal with restriction for against debtor's refiling (BNC) (Cetulio, Julie) (Entered: 09/28/2016) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/28/2016 15:39:47 | | |
| **PACER Login:** | lzieve01:4709007:0 | **Client Code:** |
| **Description:** | Docket Report | **Search Criteria:** | 1:16-bk-12368-MT Fil or Ent: filed From: 6/30/2016 To: 9/28/2016 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

Exhibit 7



FILED & ENTERED

SEP 28 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

In re:

Daniel Fumbarg




Debtor(s).

Case No.: 1:16-bk-12368-MT

CHAPTER 13

**ORDER DISMISSING BANKRUPTCY CASE WITH 180-DAY BAR TO REFILING PURSUANT TO ORDER SETTING STATUS CONFERENCE**

Date:        September 08, 2016
Time:        9:00 AM
Courtroom:  302

:

    A hearing in the above-referenced bankruptcy case was held at the above date

and time on the Order Setting Status Conference (1) Directing Compliance with

Applicable Law; and (2) Requiring Debtor(s) to Explain why this Case Should not be

Converted or Dismissed with 180-Day Bar to Refiling, pursuant to 11 U.S.C. §105(d)(1).

After no appearance was made by Debtor, and finding good cause,

//

//

Exhibit 8

1

2          **IT IS HEREBY ORDERED** that the above-referenced bankruptcy case is

3    DISMISSED with a 180-day bar to refiling.

4                                              ###

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
                                                    _Maureen A Tighe_
25    Date: September 28, 2016                   _____
                                                 Maureen A. Tighe
26                                               United States Bankruptcy Judge

27

28

Exhibit 8

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
30 Corporate Park, Suite 450
Irvine, CA 92606

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 09/29/2016 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Elizabeth (SV) F Rojas (TR), Trustee cacb_ecf_sv@ch13wla.com
United States Trustee (SV), ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 09/29/2016 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/29/2016 | Michele Dapello | /s/ Michele Dapello |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 12                    **F 4001-1.RFS.RP.MOTION**

| In re                          (SHORT TITLE) | CHAPTER: 13 |
|---|---|
| Daniel Fumbarg                    Debtor(s). | CASE NO.: 1:16-bk-12368-MT |

**ADDITIONAL SERVICE INFORMATION (if needed):**

<u>**SERVED BY UNITED STATES MAIL:**</u>

<u>**DEBTOR**</u>**:**
Daniel Fumbarg, **Pro Se**
6642 Woodlake Ave
West Hills, CA 91307

<u>**DEBTOR**</u>**:**
Daniel Fumbarg, **Pro Se**
48-371 Camino Real
Coachella, CA 92236

<u>**BORROWER:**</u>
Maria T. Neill
48-371 Camino Real
Coachella, CA 92236

<u>**PRESIDING JUDGE (exhibits tabbed pursuant to LBR 9004-1(a))**</u>**:**
United States Bankruptcy Court
Chambers of Honorable Maureen A. Tighe
21041 Burbank Blvd., Suite 324
Woodland Hills, CA 91367